UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:                                                    Case No. GL 10-07809-jtg

LON W. CRIPPS and                                         Chapter 13
DEBORAH E. CRIPPS,
                                                          Hon. John T. Gregg
                    Debtors.
_____/

In re:                                                    Case No. GL 11-11505-jtg

DUANE A. MEARS and                                        Chapter 13
SHARON L. MEARS,
                                                          Hon. John T. Gregg
                    Debtors.
_____/

## MEMORANDUM DECISION
## REGARDING FEE APPLICATIONS

APPEARANCES:    Michael Brown, Esq., Dietrich Law Firm, Lansing, Michigan.
                Barbara P. Foley, Esq., Chapter 13 Trustee, Kalamazoo, Michigan.

These matters come before the court in connection with final applications for compensation filed by the Dietrich Law Firm (the "Applicant"), counsel for the debtors in the above-captioned Chapter 13 cases (collectively, the "Debtors"). In the applications, the Applicant requests that the court award it compensation for the services provided to Lon and Deborah Cripps (the "Cripps") and Duane and Sharon Mears (the "Mears") in their respective cases. The Applicant also requests that any compensation awarded to it be paid as administrative expenses. In the event that the compensation awarded cannot be satisfied as administrative expenses through the Debtors' plans, the Applicant requests, at least in one of the cases, that the compensation be paid directly after entry of the discharge.

Barbara P. Foley, the Chapter 13 trustee (the "Trustee") in both cases, filed objections in which she contends that certain fees of the Applicant are unreasonable. The Trustee further asserts that because the Applicant filed its applications after the Debtors completed payments under their plans, the Applicant's requests for awards of compensation to be paid as administrative expenses are untimely. Finally, the Trustee argues that in the event the Debtors are required to satisfy the compensation awarded of the Applicant after entry of the discharge, the Debtors' fresh start will be impaired.

The court is called upon to consider the following issues:

(i)      whether the Applicant timely requested, and is entitled to, an award of compensation under section 330(a) for the services it provided to the Cripps and/or the Mears;

(ii)     whether the Applicant timely requested, or should be permitted to tardily request, "for cause," an administrative expense under section 503 for any compensation awarded to it in the Cripps' case and/or Mears' case; and

(iii)    whether the Cripps and/or the Mears are obligated to satisfy the compensation awarded to the Applicant after entry of the discharge.[1]

In deciding these issues, the court must strike a delicate balance between a debtor's fresh start and an attorney's right to reasonable compensation for necessary and beneficial services rendered at the end of a case.

In the Cripps' case, the court shall award the Applicant compensation for the majority of its fees and expenses, deny the Applicant's request for an administrative expense as untimely, and deem the compensation awarded subject to the discharge.[2] In the Mears' case, the court shall

---

[1]      Unless otherwise indicated, all "Chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2]      The court acknowledges that it may be violating a fundamental rule of modern grammar by using Mears' and Cripps'.

award the Applicant compensation to be paid as an administrative expense, and deny without prejudice the Applicant's request to be paid directly by the Mears after entry of the discharge.[3]

## JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. § 1334(b).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A)-(B).

## BACKGROUND

The facts are not in dispute in either case.  However, subtle factual distinctions in the two cases dictate different outcomes.

### A.    *Cripps*

In June 2010 and with the assistance of the Applicant, the Cripps jointly filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.  Later that year, the court confirmed the Cripps' plan of reorganization, as amended [Dkt. Nos. 18, 32, 36].  The Cripps' plan provided for the payment in full of general unsecured creditors over a period of sixty months.  Upon confirmation, the Applicant was awarded compensation to be paid as an administrative expense through the plan.[4]  The plan similarly stated that any additional compensation awarded to the Applicant was to be paid in full through the plan as an administrative expense, subject to allowance by the court.

Despite their best intentions, the Cripps encountered some difficulty post-confirmation, thereby requiring further services from the Applicant, including responses to two motions to dismiss filed by the Trustee [Dkt. Nos. 109, 152], prosecution and ultimately resolution of an

---

[3]      The following constitutes this court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

[4]      The Applicant was awarded a "no-look" fee for services it provided to the Cripps prior to confirmation of the plan. *See Memorandum Regarding Allowance of Compensation and Reimbursement of Expense for Court Appointed Professionals*, effective Jan. 1, 2010 and amended Oct. 9, 2013 (the "Fee Memorandum"); *see also In re Rogers*, 500 B.R. 537, 541-43 (Bankr. W.D. Mich. 2013) (explaining no-look fee in Western District of Michigan).

objection to the claim of the holder of the first priority mortgage on the Cripps' residence [Dkt. No. 46], and assistance with the purchase of a replacement vehicle after the Cripps were involved in an automobile accident [Dkt. No. 94]. As a result of these services, the Applicant sought, and the court awarded, significant post-confirmation compensation over a roughly four-year period.

The Cripps' dedication to their plan and the Chapter 13 process eventually paid off. On November 6, 2015, the Trustee sent a letter to the Cripps [Dkt. No. 154] advising them that, according to the Trustee's records, they had successfully completed all of their obligations under the plan, subject to certain intervening events, including any request by the Applicant for additional fees and expenses.[5]  A copy of the letter was also filed on the court's docket and sent to the Applicant. On the same day that the Trustee sent her letter to the Cripps, she also filed a notice of final cure of mortgage payments [Dkt. No. 155] and motions to terminate the payroll orders that the court had entered at the beginning of the case [Dkt. Nos. 156, 157].[6]

On December 7, 2015 and thirty-one days after sending her letter to the Cripps, the Trustee filed a report of plan completion in the form of a text entry on the court's docket. The report of plan completion certified to the Clerk of the Court that the Cripps had completed all payments under their plan, and requested that the court enter the discharge under section 1328(a). On the same day as the Trustee filed her report of plan completion, the Applicant filed, on behalf of the Cripps, a certificate stating that the Cripps were not required to make any payments on account of domestic support obligations [Dkt. No. 160].

---

[5]     The Trustee sends similar letters in many, if not all, of the cases in which a debtor has completed his or her payments under a plan. *See* Fed. R. Evid. 201; *United States v. Doss*, 563 F.2d 265, 269 (6th Cir. 1977) (court may take judicial notice of filings on its docket).

[6]     The court terminated its payroll orders on November 9, 2015. The holder of the first priority mortgage on the Cripps' residence complied with its obligations by filing its response to the notice of final cure on November 30, 2015.

Two days after the report of plan completion was issued, the Applicant filed and served on the Cripps and the Trustee its final fee application [Dkt. No. 162]. The application requests two forms of relief. First, it requests that the court award the Applicant compensation in the amount of $686.60 for the period beginning April 11, 2015 and ending December 4, 2015. Second, the application requests that any compensation awarded be paid as an administrative expense. The application did not, however, request that the compensation awarded survive discharge.

The application consists of only two paragraphs. The first paragraph provides summaries of the amount of fees and expenses previously awarded, the amount previously paid to the Applicant, and the amount of fees and expenses requested in the application. The second paragraph states only that unless the plan provides for payment to general unsecured creditors in full (which it did), the fees and expenses approved by the court could reduce the distribution to general unsecured creditors. In other words, the application provides minimal information. With that said, the Applicant did attach an itemized statement as an exhibit to the application.

The Trustee filed her objection [Dkt. No. 169] on December 16, 2015, after which the Applicant filed a short reply brief [Dkt. No. 173]. The court held an initial hearing on January 12, 2016.[7] One day later, the court entered the discharge.

In her objection and a supplemental brief [Dkt. No. 180], the Trustee contends that the court should not award the Applicant compensation to be paid as an administrative expense because the application was untimely in light of the letter to the Cripps, the report of plan completion, and the imminent entry of the discharge. The Trustee asserts that the Applicant's

---

[7]     At the initial hearing and at all relevant times thereafter, the Applicant appeared on its own behalf, but did not appear on behalf of the Cripps. During the initial hearing, the court explored whether an evidentiary hearing might provide the court with some additional facts to consider in light of the timing of the application. The parties, however, indicated that they would prefer to avoid an evidentiary hearing. Although the final hearing was technically an evidentiary hearing, neither party presented the court with any evidence other than a stipulation of facts [Dkt. No. 183].

delay in filing the application will prejudice the Cripps by either impairing their fresh start and/or precluding the entry of their discharge. The Trustee also asserts that because the time the Applicant spent on certain tasks was excessive and/or unnecessary, the compensation should be reduced accordingly.[8]

In its reply brief [Dkt. No. 173] and a supplemental brief [Dkt. No. 179], the Applicant notes that any delay with respect to the filing of its application was attributable to the inexperience of a billing clerk who had only recently been hired by the Applicant. Moreover, the Applicant argues that no deadline exists under the Bankruptcy Code or applicable rules for the filing of a fee application that requests an award of compensation to be paid as an administrative expense. According to the Applicant, even if such a deadline is imposed, the court should recognize a distinction between the allowance of administrative expenses, and the payment of administrative expenses. To that end, the Applicant contends, the court may award it compensation to be paid as an administrative expense, even though the Cripps and the Trustee have made the final payment and the final distribution, respectively, under the plan. Finally, in its reply brief and a post-hearing brief [Dkt. No. 188], the Applicant urges the court to hold, for purposes of these cases and others, that compensation awarded is not subject to the discharge in a Chapter 13 case.[9]

---

[8]     The Trustee has since withdrawn her objections to specific time entries. The parties have agreed that in the event the court determines the application to have been timely filed, the Applicant shall be limited to fees and expenses in the amount of $642.60.

[9]     At the hearing, the court invited, but did not require, the Applicant to file a post-hearing brief because of the potential impact in future cases to the Applicant and the bankruptcy bar in general. The court provided the same opportunity to the Trustee. The Applicant filed a lengthy post-hearing brief, while the Trustee decided to rely on her previous filings.

After the parties filed their stipulation of facts, the court held a final hearing on February 2, 2016 and took the matter under advisement.[10]  Upon consideration of the legal arguments and limited evidence presented, the court shall award the Applicant compensation, deny the Applicant's request for an administrative expense, and deem the compensation awarded to the Applicant discharged.

### B.    *Mears*

Like the Cripps, the Mears jointly filed for relief under Chapter 13 with the assistance of the Applicant.  In April 2012, the court confirmed the Mears' plan of reorganization, as amended [Dkt. Nos. 21, 30].  The Mears' plan was similar to the Cripps' plan in that it provided for the payment in full of all general unsecured creditors over a period of sixty months.

Upon confirmation of the plan, the Applicant was awarded compensation to be paid as an administrative expense.[11]  Similar to the Cripps' plan, the Mears' plan stated that any additional compensation awarded to the Applicant was to be paid in full through the plan as an administrative expense, subject to allowance by the court.[12]  However, unlike the Cripps' plan, the Mears anticipated the need to satisfy future administrative expenses by including an additional provision that established a monthly reserve in the amount of $50.00 from each plan payment.  The reserve,

---

[10]     At the request of the parties, the final hearing was held on a consolidated basis with the hearing on the fee application filed in the Mears' case, as well as a third case in which the Trustee objected to the timeliness of the Applicant's fee application.  *See In re Hirsch*, Case No. 12-03851 (Bankr. W.D. Mich. May 13, 2016).  Because *Hirsch* involved the dismissal of a case and not completion of plan payments, the court issued a separate written decision in that case.

[11]     Like in the Cripps' case, the Applicant sought, and the court approved, the "no-look" fee for services rendered prior to confirmation.

[12]     The statement filed by the Applicant pursuant to Fed. R. Bankr. P. 2016(b) [Dkt. No. 20] in the Mears' case, similar to the statement filed in the Cripps' case, states that the "Debtor" is the source from whom the Applicant is to receive future compensation.

creation of which did not affect the plan's feasibility, was earmarked for additional compensation awarded throughout the bankruptcy case.

After confirmation, the Mears' case was relatively uneventful, as the Mears appear to have consistently made the requisite payments under their plan. Neither the Trustee nor any other party in interest filed a motion to dismiss, and only once did the Mears need to amend their plan [Dkt. No. 39]. Accordingly, the Mears required few additional services from the Applicant. In April 2014, the Applicant filed, and the court approved, an interim request for compensation in the aggregate amount of approximately $500.00 to be paid as an administrative expense.

In July 2015, or just past the halfway point of the applicable commitment period, the Mears contacted the Applicant in order to explore early completion of payments under their plan. After explaining to the Mears that they would need to satisfy claims of general unsecured creditors in full as a prerequisite to plan completion and entry of the discharge, the Applicant requested an early payoff estimate from the Trustee. The Applicant also apparently advised the Mears that any additional awards of compensation would still need to be satisfied.

In September 2015, the Mears paid approximately $7,000.00 to the Trustee in partial satisfaction of the payoff amount. The Applicant thereafter approached the Trustee to further discuss the amount necessary for the Mears to satisfy their remaining payment obligations under the plan. According to the Applicant, the Trustee suggested that the funds held in reserve for future administrative expenses could be applied to satisfy in full the claims of general unsecured creditors. However, by doing so, the Mears would need to satisfy any compensation awarded to the Applicant after entry of the discharge. Although no plan amendment, other request for relief, or supplemental statement under Rule 2016(b) was filed, the Mears and the Applicant apparently

agreed in early October 2015 that the reserve for additional compensation would be applied to complete payments under the plan.

Presumably, the Trustee applied the reserve shortly thereafter, because on October 13, 2015, the Trustee sent a letter to the Mears [Dkt. No. 59] in substantially the same form as the letter sent to the Cripps, informing the Mears that they had successfully completed their obligations under the plan.  On the same day, the Trustee filed a notice of final cure of mortgage payment [Dkt. No. 60] and a motion to terminate a payroll order previously entered by the court [Dkt. No. 61].[13]  To date and unlike in the Cripps' case, the Trustee has yet to file her report of plan completion, and the court has not entered the discharge.

Approximately one month after the Trustee sent her letter, the Applicant filed and served on the Trustee and the Mears its final fee application.[14] The application requests that the court award the Applicant compensation in the amount of $911.75 for services for the period beginning March 13, 2014 and ending November 4, 2015.  In accordance with the plan, the application also requests that any compensation awarded be paid as an administrative expense.  The application consists of three paragraphs, the first two of which contain the same type of information as the application filed in the Cripps' case.  However, unlike the application filed in the Cripps' case, the application in the Mears' case includes a third paragraph requesting that in the event the fees and expenses approved by the court exceed the funds available under the plan, such fees and expenses survive discharge and may be paid directly by the Mears.  Although the application itself lacks any

---

[13]      The court granted the motion to terminate the payroll order on October 14, 2015 [Dkt. No. 62].  The holder of the first priority mortgage on the Mears' residence complied with its obligations by filing its response to the notice of final cure on October 28, 2015.

[14]      Neither the Cripps nor the Mears executed the fee applications filed in their respective cases.  The Cripps and the Mears did, however, sign most, if not all, other pleadings filed by the Applicant on their behalf in their respective cases.  *See also In re Hirsch*, Case No. 12-03851 (Bankr. W.D. Mich. May 13, 2016) (same).

description of the services provided to the Mears, it does attach an itemized statement. The itemized statement reveals that approximately one hour of time was spent by the Applicant engineering the early payoff, with the remainder of time relating to other issues such as semi-annual reviews, payroll orders, and plan analysis.

The Trustee filed her objection [Dkt. No. 67], after which the Applicant filed a short reply brief [Dkt. No. 69]. The court held an initial hearing on December 10, 2015.[15]

In her objection and a supplemental brief [Dkt. No. 73], the Trustee makes several arguments against granting the relief requested in the application. First, the Trustee argues that the Applicant's request for an award of compensation and, separately, its request for allowance of an administrative expense were untimely. Second, the Trustee contends that the fees and expenses of the Applicant were not necessary and/or should have been paid through the plan.[16] Third, the Trustee argues that if the compensation awarded by the court survives discharge, the Mears will not receive the fresh start to which they are entitled. Finally, the Trustee asserts that the time spent on certain tasks was excessive and the compensation reduced accordingly.[17]

---

[15] Like in the Cripps' case, the Applicant appeared only on its own behalf, and not on behalf of the Mears. During the initial hearing, the parties indicated that they preferred to avoid an evidentiary hearing and would therefore stipulate as to the relevant facts. Although given the opportunity, neither party presented any evidence other than a stipulation of facts [Dkt. No. 74].

[16] In both the Mears' case and the Cripps' case, the Trustee contended in her objections that the timing of the fee applications was calculated so as to avoid paying the Trustee's fees. *See also In re Vela*, 526 B.R. 230, 236-37 (Bankr. W.D. Mich. 2015) (discussing rebuttable presumption that trustee acts as disbursing agent for payments made pursuant to plan). The Trustee appears to have abandoned this argument, as it was not addressed in detail in her supplemental briefing, or at the initial or final hearings. Even if not abandoned, the objection is overruled, as no evidence has been presented in support thereof. The court need not determine at this time the circumstances under which a similar objection might be sustained.

[17] The Trustee has since withdrawn her objections to specific time entries. The parties have agreed that in the event the court determines the application to have been timely filed, the Applicant shall be limited to fees and expenses in the amount of $752.25.

The Applicant counters that no deadline for the filing of a fee application exists that would preclude the court from awarding it compensation to be paid as an administrative expense. Accordingly, the Applicant seems to assert that it is automatically entitled to an administrative expense if the court finds that compensation should be awarded.  In addition, the Applicant argues that, notwithstanding the terms of the plan, it has agreed to be paid any administrative expense directly by the Mears after entry of the discharge.

After the parties filed their stipulation of facts, the court held a final hearing and took the matter under advisement.  Upon consideration of the legal arguments and limited evidence presented, the court shall award the Applicant compensation to be paid as an administrative expense in the aggregate amount of $752.25.  However, under the circumstances, the court shall deny without prejudice the Applicant's request to have the compensation awarded to it survive discharge.

## **DISCUSSION**

In these cases, the court is predominantly presented with issues of timing.  Although these issues arise at the end of the Debtors' cases, their origins can be traced to the beginning of the cases.

### *A.      Compensation of Attorneys for Debtors*

The court shall first consider whether to award the Applicant compensation.  Because this court analyzed the various compensation requirements in detail in *Hirsch*, the court's discussion in these cases of the statutory predicates and related rules is purposely abbreviated.  *See In re Hirsch*, Case No. 12-03851 (Bankr. W.D. Mich. May 13, 2016).

### 1.      *Disclosure Requirements Under 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016*

In order to be entitled to compensation from the estate or any other source, an attorney for a debtor under any chapter of the Bankruptcy Code must adhere to certain disclosure requirements. Section 329 of the Bankruptcy Code governs transactions between a debtor and his or her attorney and requires an attorney representing a debtor to file a statement disclosing any compensation arrangement, regardless of whether the fees are to be paid by the debtor, the debtor's estate, or a third person. *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 477 (6th Cir. 1996).

The compensation provisions of the Bankruptcy Code are procedurally implemented by Rule 2016 of the Federal Rules of Bankruptcy Procedure.  Rule 2016(a) applies to any professional seeking an administrative expense under sections 330(a) and 503 for fees and expenses, including attorneys representing debtors in Chapter 13 cases.  It requires a professional to file with the court an application containing certain information, including an itemized statement of fees and expenses.  Fed. R. Bankr. P. 2016(a); *see* LBR 2016-2(e).

Where an attorney for a debtor is seeking compensation, Rule 2016(b) requires the attorney to disclose information related to services rendered "in connection with the case," regardless of whether compensation is sought from the estate.  Fed. R. Bankr. P. 2016(b).  The information contained in the statement filed under Rule 2016(b) must permit the court and certain parties in interest to preliminarily assess whether the fees and expenses are reasonable without further inquiry.  *In re Hirsch*, Case No. 12-03851 (Bankr. W.D. Mich. May 13, 2016) (citing Fed. R. Bankr. P. 2016(b); Fed. R. Bankr. P. 2017).  As this court noted in *Hirsch*, the Sixth Circuit has

stated that an attorney for a debtor should attach a "detailed statement of services rendered and expenses incurred" to his or her statement under Rule 2016(b). *Id.* (citation omitted).

In these cases, the Applicant has requested that the court award compensation to it for all of the services provided to the Mears and the Cripps in connection with their bankruptcy cases. The Applicant timely filed its statements under Rule 2016(b) shortly after the cases commenced. The statements set forth the amount and source of compensation, among other things, and refer to agreements between the Applicant and the Debtors. *See* 11 U.S.C. § 528(a)(1) (requiring execution of written agreement between debtor and attorney).

The Applicant also properly sought approval of its fees and expenses from the court in both cases by filing fee applications. *See In re 5900 Assocs., Inc.*, 468 F.3d 326, 330 (6th Cir. 2006); *In re Anderson*, 253 B.R. 14, 20 (Bankr. E.D. Mich. 2000). The Trustee, the only party to object, does not allege any failure on the part of the Applicant to disclose requisite information. Instead, the Applicant's disclosures are, for the most part, sufficient. However, the Applicant has not filed a copy of its retention agreement in either case. The court believes such failures to be an oversight which, under the circumstances, may be remedied by the Applicant. *Contra In re Hanson*, 223 B.R. 775, 781 (Bankr. D. Or. 1998) (denying compensation because attorney failed to file retention agreement with statement under Rule 2016(b)). In sum, the court finds that the Applicant has complied with its disclosure obligations in both cases.

### 2. *Reasonableness of Fees and Expenses – 11 U.S.C. § 330*

The court next turns to the reasonableness of the fees and expenses and whether the court should award compensation to the Applicant under section 330(a). Section 330 sets forth the means by which to evaluate the reasonableness of compensation sought by a professional, including an attorney for a debtor. As noted by this court in *Hirsch*, the Sixth Circuit has stated

that section 330 applies to all fees in connection with a bankruptcy case, and not only those that are to be paid from the bankruptcy estate as an administrative expense. *In re Hirsch*, Case No. 12-03851 (Bankr. W.D. Mich. May 13, 2016) (citations omitted).

Section 330(a) provides the framework for a court to review the fees and expenses requested by an attorney for a debtor in a Chapter 13 case. It states, in pertinent part, that:

> the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B).

To determine whether compensation is reasonable, courts are directed to section 330(a)(3) which sets forth a non-exhaustive list of "other factors." 11 U.S.C. § 330(a)(4)(B); *see Boddy v. United States Bankr. Court (In re Boddy)*, 950 F.2d 334, 337 (6th Cir. 1991). A professional seeking approval of fees and expenses bears the burden of proof by a preponderance of the evidence. *In re Ulrich*, 517 B.R. 77, 80 (Bankr. E.D. Mich. 2014) (citations omitted). The burden applies regardless of whether any party in interest objects, as bankruptcy courts have an independent obligation to review fees and expenses. *See*, *e.g.*, *Soloman v. Wein (In re Huhn)*, 145 B.R. 872, 875 (W.D. Mich. 1992).

In the Cripps' case, the Applicant provided services to the Cripps that were, for the most part, necessary and beneficial. The Applicant assisted the Cripps with issues related to their tax returns, a motion to dismiss filed by the Trustee, and the completion of their case. The court notes that the Applicant spent approximately one hour assisting the Applicant with completion of plan

payments, termination of payroll orders, and the notice of the mortgage cure payment.[18]   Although three time entries are duplicative and thus unnecessary, the Applicant appears to have guided the Cripps through the plan completion process to ensure that they were fully informed of the remaining steps in their case.  In sum, the court finds in the Cripps' case that the Applicant is entitled to compensation under section 330(a) in the stipulated amount.

The Applicant also provided necessary and beneficial services in connection with the Mears' case.  The Applicant appears to have apprised the Mears with respect to the status of their case on a semi-annual basis.  The Applicant performed an analysis to determine whether the Mears could lower their plan payments, and communicated with the Trustee and the Mears regarding issues with the payroll order.  Finally, the Applicant assisted the Mears by coordinating with the Trustee regarding early plan completion.  The court therefore finds in the Mears' case that the Applicant is entitled to an award of compensation under section 330(a), also in the stipulated amount.

### 3.   Timeliness of Request for Compensation

In her objections and supplemental briefs, the Trustee refers to the Applicant's fee applications in both cases as being untimely.  The court is uncertain whether the Trustee contends that the requests for awards of compensation and, separately, requests for allowance of administrative expenses were untimely, or if her objection is limited to the Applicant's requests for administrative expenses.  However, in both cases, the Trustee cites as support a decision from the Bankruptcy Court for the Southern District of Ohio.  *In re Newman*, 270 B.R. 845, 848-49

---

[18]   Absent exigent circumstances, it seems unlikely that plan completion services will require an attorney to spend more than one hour of time.  In the majority of cases, an attorney should be able to provide such services in less than one hour.  However, the appropriate amount of time should be determined by the facts and circumstances of each case.

(Bankr. S.D. Ohio 2001).  Because *Newman* involved requests for awards of compensation under section 330(a), the court infers that the Trustee is objecting to the Applicant's similar requests in these cases.

The court notes that it has the inherent authority to establish a deadline for filing requests for awards of compensation.  *In re Alda*, 464 B.R. 61 (B.A.P. 6th Cir. 2010) (table decision) (citations omitted).  However, for many of the same reasons stated in *Hirsch*, the court is unwilling to impose a deadline in the context of these cases.  *See In re Hirsch*, Case No. 12-03851 (Bankr. W.D. Mich. May 13, 2016).  The Trustee has not demonstrated any prejudice as a result of the requests for compensation.[19]  While the applications could have been filed earlier and with more frequency, the court does not find the requests to be untimely under the circumstances.  That is not to say, of course, that requests for an award of compensation will be timely in all cases.  Instead, the court will make such determinations on a case by case basis taking into account all relevant factors.  The court reiterates that to the extent a firm deadline is even necessary, it should be established through the local rules process with input from the other judges of this court, the Chapter 13 trustees, the debtors' bar, and other parties in interest.  In sum, the court finds the Applicant's requests for awards of compensation to have been timely in both cases.

**B.      *Allowance of an Administrative Expense – 11 U.S.C. § 503***

Having determined that the Applicant is entitled to an award of compensation under section 330(a) in both cases, the court next considers whether the Applicant's requests for administrative expenses were timely.

---

[19]      Absent an award of compensation under section 330(a), an attorney for a debtor in a Chapter 13 case could not receive even a voluntary payment from a debtor after discharge or dismissal.  *See infra* at n.31; *In re Hirsch*, Case No. 12-03851 (Bankr. W.D. Mich. May 13, 2016).

As discussed in *Hirsch*, no section of the Bankruptcy Code or any applicable rule *explicitly* establishes a deadline for the filing of requests for administrative expenses. *See In re Hirsch*, Case No. 12-03851 (Bankr. W.D. Mich. May 13, 2016) (citations omitted).[20]  Although section 503(a) refers to timely requests for administrative expenses, it does not actually impose a firm time period within which such a request must be filed. *Id.* (citations omitted); *see* 11 U.S.C. § 503(a).  Instead, absent any explicit or implicit directive in the Bankruptcy Code or an applicable rule, bankruptcy courts have the inherent authority under section 503(a) and section 105(a) to establish the time by which a request for an administrative expense must be made. *See*, *e.g.*, *Hall Fin. Group, Inc. v. DP Partners, Ltd. P'ship (In re DP Partners Ltd. P'Ship)*, 106 F.3d 667, 671-72 (5th Cir. 1997) (bankruptcy courts have discretion to establish deadlines for filing requests for administrative expenses); *In re Chicago Pacific Corp.*, 773 F.2d 909, 917 (7th Cir. 1985) (request for administrative expense must be made within reasonable time).  Nonetheless, even where the Bankruptcy Code or an applicable rule provides an explicit or implicit deadline, the court may, "for cause," allow a tardily filed request for an administrative expense.  11 U.S.C. § 503(a).

In *Hirsch*, this court declined to impose a deadline for the filing of fee applications after voluntary dismissal of a Chapter 13 case.  Based on the facts at issue, the court in *Hirsch* reasoned that the attorney for the debtor had insufficient time to file a fee application requesting an administrative expense in light of, among other things, its duty to promptly seek dismissal on behalf of its client. *In re Hirsch*, Case No. 12-03851 (Bankr. W.D. Mich. May 13, 2016).  Accordingly, because neither the Bankruptcy Code nor any applicable rule contain an express or implicit deadline for the filing of a fee application requesting an administrative expense after dismissal, the *Hirsch* court concluded that the request was timely under section 503(a). *Id.*  The

---

[20]  While no *applicable* rule establishes such a deadline, Rule 1019(6) imposes a deadline for the filing of requests for administrative expenses upon conversion.  Fed. R. Bankr. P. 1019(6).

court further observed that while no prejudice to the debtor or any other party occurred by deeming the request timely, the same could not be said for the attorney. *Id*. In *Hirsch*, the trustee remained in possession of funds that she might have been able to distribute under the plan, even after the case had been dismissed. *Id*. In the event that the court had deemed the attorney's request untimely solely because of dismissal, the attorney would have been denied the opportunity to be paid from any future distribution of funds by the Trustee. *Id*.[21]

In these cases, the court is again confronted with issues related to the timing of a request for an administrative expense. The court must first consider in each case whether the Applicant timely requested an administrative expense. And, if the administrative expense was not timely requested, the court must determine whether "cause" exists to permit the Applicant to tardily file its request. Not surprisingly, the court's conclusions are dictated by the specific facts of each case, which the court will address in turn.

### 1.    *The Request for an Administrative Expense in the Cripps' Case*

In the Cripps' case and similar to her position in *Hirsch*, the Trustee argues that the request for an administrative expense was not timely made. According to the Trustee, in the event that the court deems the request for an administrative expense timely, the Cripps will either be denied their fresh start or not receive their discharge. The Trustee further notes that the Applicant was fully aware that the Cripps were rapidly approaching both the date of plan completion and the expiration of the maximum sixty-month applicable commitment period, yet the Applicant neglected to file its fee application.

In response, the Applicant explains that nothing in the Bankruptcy Code or any applicable rule requires a request for an administrative expense to be filed within a certain period of time.

---

[21]    The court also noted in *Hirsch* that no party had raised an argument based on the doctrine of laches. *Id*.

The Applicant also seems to suggest that to the extent the request in the Cripps' case was untimely, cause exists for this court to permit a tardy request because any delay was attributable to the inexperience of the Applicant's newly hired billing clerk.

After carefully reviewing the relevant sections of the Bankruptcy Code and the terms of the confirmed plan, the court concludes that although the request for compensation in Cripps' case was timely as discussed above, the separate request for an administrative expense was not. Moreover, under the circumstances, the Applicant has not satisfied its burden of demonstrating any "cause" to permit a tardy request for an administrative expense.

### a.      *The Request Was Untimely*

Like in *Hirsch*, the Applicant argues in the Cripps' case that no deadline exists under the Bankruptcy Code or any applicable rule that establishes a deadline for the filing of a fee application that requests allowance of an administrative expense. The Applicant is correct in part. No deadline exists for a professional to seek an award of compensation under the Bankruptcy Code and applicable rules, as discussed above. The same is not necessarily true with respect to a request for an administrative expense. The Applicant overlooks the *implicit* deadline established by various sections of Chapter 13. These sections, when considered together, require that a request for an administrative expense be made, at the latest, prior to completion of plan payments.

Section 1322 of the Bankruptcy Code, entitled "Contents of Plan," sets forth both mandatory and permissive Chapter 13 plan provisions. 11 U.S.C. § 1322. Section 1322(a)(2), which is among the mandatory provisions of a Chapter 13 plan, provides for the treatment of priority claims. It states that the plan:

> shall provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim. . .

11 U.S.C. § 1322(a)(2).  Section 507(a) states that the priority claims referenced in section 1322(a)(2) include allowed administrative expenses under section 503(b).  11 U.S.C. § 507(a)(2). Section 503(b), in turn, provides that administrative expenses include awards of compensation and reimbursement of expenses under section 330(a).  11 U.S.C. § 503(b)(2); *see* 11 U.S.C. § 330(a). Section 330(a) specifically includes compensation awarded to an attorney for a debtor in a Chapter 13 case.  11 U.S.C. § 330(a)(4)(B).  Therefore, unless an attorney for a debtor holding an administrative expense agrees to a different treatment, the administrative expense must be paid in full under the plan.

Section 1322 also sets forth a temporal limitation regarding the duration of the plan.  It provides, among other things, that the length of payments under a Chapter 13 plan may not exceed sixty months.  11 U.S.C. § 1322(d) (identifying time period of plan based on current monthly income); *see* 11 U.S.C. § 1325(b)(4) (determining applicable commitment period); 11 U.S.C. § 1329(c) (proscribing post-confirmation modification of plan that extends payments beyond sixty months).   In the event that payments under a plan cannot be completed within sixty months, the plan cannot be confirmed.  Similarly, in the event that a confirmed plan is not completed within sixty months, a debtor's bankruptcy case is arguably subject to dismissal.  *See*, *e.g.*, *In re Grant*, 428 B.R. 504, 507-508 (Bankr. N.D. Ill. 2010) (where plan exceeds sixty month limitation, case must be dismissed); *but see Marshall v. Henry (In re Henry)*, 368 B.R. 696, 700-701 (N.D. Ill. 2007) (noting a split of authority and finding dismissal under section 1307 does not include plan life of more than sixty months as basis for dismissal).

Upon confirmation, the terms of a plan are binding upon the debtor, the trustee and all other parties in interest.  11 U.S.C. § 1327; *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260,

275 (2010).[22]  Nonetheless, at any time before the completion of payments under the plan, a debtor, the trustee, or the holder of an allowed unsecured claim may modify the plan.  11 U.S.C. § 1329(a). Any modification under section 1329(a) must take into account certain other sections, including section 1322(a)(2).  Once all payments under a plan have been completed, the plan can no longer be modified.  *Id.*

After a plan is confirmed, the Chapter 13 trustee closely monitors the debtor's performance under his or her plan and is required to provide information concerning the debtor's estate and its administration.  11 U.S.C. § 1302(b)(1), (4); *see* 11 U.S.C. § 704(a)(7).  In the Western District of Michigan, both Chapter 13 trustees provide parties in interest with information regarding the debtor's performance on a continuing basis through electronic means.  *In re Clinkscale*, 525 B.R. 399, 406 (Bankr. W.D. Mich. 2015).  By doing so, the Chapter 13 trustees not only comply with their statutory duties, but also provide the debtor and his or her attorney with the information necessary to ensure that the debtor is able to make any adjustments to successfully complete the plan.  *Id.*  When the debtor has complied with all of his or her obligations under the plan, the Chapter 13 trustees issue their report of plan completion certifying to the Clerk of the Court that the debtor is entitled to a discharge.  *See also Chapter 13 Bankruptcy* § 343.1 (Keith M. Lundin ed., 3d ed. 2000 & Supp. 2004); *Handbook for Chapter 13 Standing Trustees Effective October 1, 2012*, at pp. 3-39 – 3-40 (requiring Chapter 13 trustees to "certify promptly to the court when the debtor has successfully completed the plan").

After all payments have been made under a plan, the debtor is required to, among other things, certify that there are no outstanding domestic support obligations.  11 U.S.C. § 1328(a).

---

[22]    The term "party in interest" includes "the debtor, the trustee, a secured creditor, an unsecured creditor, or 'anyone who has a legally protected interest that could be affected by a bankruptcy proceeding.'" *In re Hudson*, 260 B.R. 421, 435 n.23 (Bankr. W.D. Mich. 2001) (quoting *Matter of James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992)).

Because the certificate cannot be filed prior to completion of plan payments, the debtor's certification in this regard acts as an acknowledgement of the report of plan completion. *See In re Levy*, 2014 WL 1323165, at *1 (Bankr. N.D. Ohio Mar. 31, 2014) (noting that domestic support certification is an "end of case" document filed by debtor in pursuit of discharge and in response to notice of plan completion). "[A]s soon as practicable" thereafter, the court is required to enter a discharge of all debts provided for by the plan or disallowed under section 502. 11 U.S.C. § 1328(a).

After considering the relevant sections of the Bankruptcy Code and the terms of the confirmed plan, it is clear that the Applicant's request for an administrative expense in the Cripps' case was untimely. In their confirmed plan, the Cripps were required to satisfy the obligations of their general unsecured creditors over a period of sixty months by making bi-weekly payments. *See* 11 U.S.C. § 1322(d). The Cripps were also required to satisfy priority claims, including administrative expenses, in full through the plan. *See* 11 U.S.C. § 1322(a); *see also* 11 U.S.C. § 507(a)(2). According to the plan, all compensation awarded to the Applicant was to be paid as an administrative expense, subject to allowance by the court. *See* 11 U.S.C. § 330(a)(3)-(4); 11 U.S.C. § 503(b)(2). Therefore, under the Cripps' plan, any compensation awarded to the Applicant could only be paid if it was allowed as an administrative expense prior to completion of payments under the plan.

After their plan was confirmed, the Cripps made all of the requisite payments within the applicable commitment period. The Trustee, in turn, made all of the requisite distributions under the plan, including distributions that satisfied the previously allowed administrative expenses of the Applicant. Upon receiving the final payment due from the Cripps under their plan, the Trustee sent the Cripps and the Applicant her letter stating as follows:

Our preliminary review of the file in this case indicates that you have successfully completed your Chapter 13 Plan. *Therefore, you may use this letter as your authority to immediately cease the payments you have been making to this office.* If you have a payroll deduction, we will obtain the order to stop those payments from being deducted from your payroll. You and your employer will receive a copy of the order stopping the payroll deduction once it has been signed by the court. *Any funds received after the review date will be refunded to you.*

*You are cautioned, however, that your attorney may file for any additional fees due them. Prior to our completion audit and closing of your case we will review your case once again to make sure your attorney has been paid in full*, the mortgage is current, and the secured creditors have been paid in full according to your plan. While we find that a response to claims to be the exception rather than the rule, a response certainly can occur. If there is a response, you will be notified as will your attorney with the amount owed and the reason why. Therefore, if you move, you should keep the Court, the Trustee and your attorney apprised of your current address for the next six months.

Once the preliminary review is done, subject to the completion audit, there will be a delay of approximately 30 days until you receive your discharge from the court.

I want to take this opportunity to congratulate you, at least from a preliminary standpoint on the apparent completion of your plan.

(Trustee Letter at p. 1 (emphasis added).)

The Trustee's letter served several purposes and was designed to benefit not only the Cripps, but also the Applicant. First, the letter informed the Cripps that, according to the Trustee's records, the Cripps were close to plan completion. In other words, the end was in sight. On a preliminary basis, the Cripps had already made their last payment, and the Trustee had already made her last distribution. The letter also notified the Cripps that the Applicant was not foreclosed from seeking an award of compensation to be paid as an administrative expense. The letter was intended to provide the Cripps with advance warning of the potential need to make an additional plan payment on account of any allowed administrative expense of the Applicant in a relatively

short period of time, or amend their plan so as to avoid any delay with respect to entry of their discharge.

Second, and just as importantly, the letter advised the Applicant that because the payments were close to completion, it would be difficult for the Applicant to be paid its fees and expenses as an administrative expense through the plan, especially in light of the fact that the plan was on the cusp of its sixtieth month.  As such, the Applicant was expressly notified by the Trustee that it would need to seek an award of compensation to be paid as an administrative expense as soon as possible and, to the extent necessary, discuss with the Cripps the need to file a post-confirmation plan amendment to address any compensation awarded that could not be satisfied prior to entry of the discharge.  The Trustee's letter placed the burden on the Applicant, the Cripps' legal counsel, to inform the Cripps not only regarding the accrual of any additional fees and expenses, but also the means by which to address such fees and expenses given the time constraints imposed at the end of the case.[23]

Unfortunately, the Applicant did not file its fee application promptly upon receiving the Trustee's letter.  With no request for additional fees and expenses to be paid as an administrative expense on file, the Trustee issued her report of plan completion just over thirty days after she sent her letter.  In the report of plan completion, the Trustee certified to the Clerk of the Court that the

---

[23]   The court is not suggesting that an attorney for a debtor does not have a duty to discuss these issues with the debtor until the case is close to completion.  Rather, an attorney for a debtor has an obligation to inform the debtor of such issues beginning with the initial consultation and execution of the retention agreement, and continuing throughout the case.  *See In re Williams*, 378 B.R. 811, 826 (Bankr. E.D. Mich. 2007) (attorney for debtor has affirmative obligation to assess in advance impact of potential fees and expenses on debtor and plan so debtor can make informed decision as to course of action).  The court recognizes that some debtors may not respond promptly to communications from their attorneys.  Regardless, an attorney has a continuing duty to attempt to communicate with the debtor (preferably in writing) so that the debtor has an opportunity to take necessary action or redress any deficiencies. *See* Mich. R. Prof. Cond. 1.4.

Cripps had satisfied all of their obligations under the confirmed plan, including any payments on account of allowed administrative expenses. Specifically, the report stated as follows:

> Trustee's Report of Plan Completion. Now comes the Standing Chapter 13 Trustee and certifies that the Debtor has completed the payments required by the confirmed plan in this matter. The Trustee's Final Report & Account will follow upon the bank clearing of all disbursement checks. WHEREFORE, the Trustee respectfully requests that the Court enter the discharge of the debtor's debts pursuant to 11 U.S.C. Section 1328.

Three hours after the Trustee filed her report of plan completion, the Applicant acknowledged that the Cripps had completed payments under their plan and were entitled to entry of the discharge when the Applicant, on behalf of the Cripps, filed the certificate stating that the Cripps had satisfied any domestic support obligations. At that point in time, because the plan payments were complete, the Applicant could no longer file a timely request for an administrative expense. There were simply no funds in the estate from which to pay the Applicant, nor would there be any in the future. The plan was complete, rendering the Applicant's request for an administrative expense futile.

The Applicant contends that the court should award it an administrative expense, even after completion of payments and distributions under the plan. According to the Applicant, the allowance of an administrative expense is one thing, while payment of that allowed administrative expense is another. As support for its argument, the Applicant directs the court to a decision wherein the Seventh Circuit Court of Appeals held that a bankruptcy court can award an administrative expense despite the fact that the estate was without funds from which to satisfy the administrative expense. *In re Sweports, Ltd.*, 777 F.3d 364 (7th Cir. 2015). However, *Sweports* is distinguishable from the facts in the Cripps' case. In *Sweports*, the court approved a fee application so that the attorney, who had otherwise expected to be paid from the estate, could seek payment from the debtor after dismissal. *Id*. at 367-68. Importantly, in *Sweports*, the debtor had

not completed payments under its plan, nor had the discharge entered. As such, there was no implicit deadline established by the Bankruptcy Code and/or the confirmed plan for the filing of a request for an administrative expense.

The facts in *Hirsch* are likewise distinguishable from those in the Cripps' case. In *Hirsch*, the court concluded that it should award the attorney compensation to be paid as an administrative expense after the case was dismissed. *In re Hirsch*, Case No. 12-03851 (Bankr. W.D. Mich. May 13, 2016). The court did so in *Hirsch* because it was still possible for the administrative expense to be satisfied through the plan under the circumstances, even after dismissal. *Id*. The court also expressed concern over the ethical dilemma that the court would create if it held that an attorney is required to file a fee application before seeking dismissal but after receiving such instruction from the debtor. *Id*.

Here, the Cripps have completed payments under their plan, and the plan has not been amended to provide an alternative arrangement for compensation. Unlike in *Hirsch*, the Cripps' plan provides the Applicant with no recourse after the payments under the plan have been completed. In addition, there is no possibility of the Cripps' estate having funds with which to satisfy the Applicant's administrative expense. Finally, unlike in *Hirsch*, the Applicant was not confronted with an ethical dilemma, as it had significant time in which to file its fee application.

The Applicant next argues that even if the court determines that a deadline exists for filing a request for an administrative expense in the Cripps' case, the Applicant has agreed to different treatment of its priority claim under section 1322(a)(2). The court is not persuaded by this argument either. As noted above, the plan provides that any compensation awarded to the Applicant can only be paid as an administrative expense. The plan provides that all claims entitled to priority, including administrative expenses, must be paid in full. Under the confirmed plan, the

Applicant *did not* agree to different treatment of its priority claim, and the plan remains binding unless modified.[24]   11 U.S.C. § 1327(a); *see Ford Motor Credit Co. v. Parmenter (In re Parmenter)*, 527 F.3d 606, 608-609 (6th Cir. 2008).   The terms of a confirmed plan may be modified only after court approval.   11 U.S.C. § 1329(b)(2) (plan as modified becomes the plan unless disapproved by court after notice and a hearing); *see In re Bagby*, 218 B.R. 878, 889 (Bankr. W.D. Tenn. 1998) (even in absence of objections, court may disapprove of modified plan if it fails to satisfy statutory requirements).   In the Cripps' case, the plan was not modified, nor can it now be modified in light of the fact that all payments have been completed.   *See* 11 U.S.C. § 1329(a). The Applicant cannot unilaterally alter the terms of the confirmed plan by announcing in a reply brief to a fee application that it has elected a different treatment.   *See Wolff v. Johnson (In re Johnson)*, 344 B.R. 104, 108 n.6 (B.A.P. 9th Cir. 2006) (consent of debtor to direct payment of approved attorney's fees demonstrated by plan amendment drafted by attorney, signed by debtor and supported by declaration).   The Applicant's reliance on section 1322(a)(2) is thus unavailing.

Because the Cripps completed their payments before the application was filed, there are no funds with which to pay any administrative expense, and by the express terms of section 1329(a), the plan may no longer be modified to provide an alternative means by which to satisfy the fees and expenses of the Applicant.   The court acknowledges that the result is somewhat harsh.   As

---

[24]   Whether it would be appropriate for the court to *confirm* a plan wherein a debtor proposes to pay his or her attorney outside of the plan or post-discharge is debatable. *See also In re Wyant*, 217 B.R. 585, 587-88 (Bankr. D. Neb. 1998) (plan cannot contingently provide that attorneys' fees will be paid directly by debtor absent prior court approval).  Hypothetically and perhaps in rare circumstances, it is conceivable that such treatment might be in the debtor's best interest.  In the majority of circumstances, however, it is more appropriate for the debtor to *amend* the plan after the attorney provides the debtor with a realistic estimate of additional fees and expenses. *See In re Williams*, 378 B.R. at 826.  The debtor would then be in a position to provide his informed consent to the incurrence of additional fees and expenses, and the consequences thereof. *See* Mich. R. Prof. Cond. 1.4(a) (attorney shall keep client reasonably informed as to status of a matter); Mich. R. Prof. Cond. 1.5(b) & Comment 1 (attorney shall communicate basis or rate of fee to client and shall provide revised estimate in the event of developments rendering earlier estimate substantially inaccurate).

discussed above, the Applicant clearly provided services to the Cripps that were necessary and beneficial to them in connection with their case, thereby warranting an award of compensation under section 330(a).  However, under the circumstances, the court concludes that the Applicant's request for an administrative expense under section 503 is untimely.

### b.        No Cause Exists to Allow a Tardily Filed Request

Having concluded that the Applicant's request for an administrative expense in the Cripps' case was not timely, the court next considers whether "cause" exists for the court to permit a tardy request for an administrative expense.  *See* 11 U.S.C. § 503(a).  Neither the Bankruptcy Code nor any applicable rule define "cause" or "for cause", and its plain meaning is less than certain, as evidenced by definitions given to the term and phrase in various dictionaries.  Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/cause ("cause" is "sufficient reason"); Black's Law Dictionary 221 (6th ed. 1990) ("cause" is "a reason for an action or condition" or "a ground of a legal action").  To add to the uncertainty, the legislative history of section 503(a) and the underlying purpose are similarly of little assistance.  *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 355 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 66 (1978) (providing no guidance other than to indicate intent to defer Federal Rules of Bankruptcy Procedure).[25]

The court is guided to some extent by an analogous decision of the United States Supreme Court, wherein it affirmed a decision of the Sixth Circuit regarding whether a creditor should be permitted to file an untimely proof of claim "for cause" under Fed. R. Bankr. P. 3003(c).  *Pioneer*

---

[25]        The court notes, however, that the Sixth Circuit has considered the meaning of the phrase for cause and the term "cause" in other contexts.  *Alt v. United States (In re Alt)*, 305 F.3d 413, 418-19 (6th Cir. 2002) (whether "cause" exists to dismiss under section 1307(c) requires consideration of totality of circumstances); *Laguna Assocs. Ltd. P'Ship v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. P'Ship)*, 30 F.3d 734, 737 (6th Cir. 1994) (noting that Bankruptcy Code does not define cause and stating that whether relief from automatic stay should be granted for cause is discretionary matter to be decided on case-by-case basis); *Brunswick Assocs. Ltd. P'Ship v. Pioneer Invest. Servs. Co. (In re Pioneer Invest. Servs. Co.)* 943 F.2d 673, 676 (6th Cir. 1991), *aff'd*, 507 U.S. 380 (1993) (whether to permit the filing of untimely proof of claim requires court to consider Rule 9006(b) and determine whether movant can establish cause to extend time based on all relevant factors).

*Invest. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380, 382-83 (1993). The Court concluded that the movant had established "excusable neglect" warranting an extension of time for cause, applying a flexible approach considering the reason for the delay and potential prejudice to other parties. *Id.* at 387. The Court cautioned that ignorance of court rules cannot satisfy the standard for excusable neglect or cause, but noted that the concept is somewhat "elastic." *See id.* at 392.

Several courts have addressed the meaning of the phrase "for cause" in section 503(a) by, among other things, referring to the *Pioneer* factors. *In re Anderson*, 253 B.R. at 19 (relying on excusable neglect under Rule 9006(b)(1) to determine cause under section 503(a)); *In re Gurley*, 235 B.R. 626, 631-32 (Bankr. W.D. Tenn. 1999) (same); *In re Bridgeview Aerosol, LLC*, 2010 WL 2465401, at \*2 (Bankr. N.D. Ill. June 16, 2010) (same); *Good v. Blankenship* (*In re Heartland Steel, Inc.*), 2003 WL 23100035, at \*4 (S.D. Ind. Dec. 16, 2003) (cause broader than excusable neglect but considering *Pioneer* factors). The courts agree that the party seeking to tardily request payment of an administrative expense bears the burden of proof by a preponderance of the evidence. *See*, *e.g.*, *Tippins Bank and Trust v. Jarriel (In re Jarriel)*, 518 B.R. 140, 145 (Bankr. S.D. Ga. 2014).

In light of the guidance provided by other courts, this court concludes that "cause" under section 503(a) should be determined by examining all relevant factors, including (i) the prejudice to the party requesting the administrative expense, (ii) the prejudice to other parties in interest, most notably the debtor, (iii) the cause of the delay, (iv) the length of the delay, (v) the reason for the delay and whether it was in the control of the movant, and (vi) whether the movant acted in good faith. *See In re Pioneer Invest. Servs. Co.*, 507 U.S. at 382-83. Although a court should consider the factors for excusable neglect set forth in *Pioneer*, such factors are non-exclusive and

cause should be determined on a case-by-case basis. Like other courts, this court believes it is appropriate to place significant emphasis on whether the delay was caused by the movant, or some other intervening (and perhaps unavoidable) event. *See*, *e.g.*, *In re Anderson*, 253 B.R. at 19.

In the Cripps' case, the Applicant has not demonstrated "cause" justifying a tardily filed request for an administrative expense. At the outset, the court feels compelled to state that nothing in the record indicates that the Applicant has exhibited a lack of good faith, whether in relation to the Trustee, the Cripps or any other party in interest. The Applicant and its attorneys frequently represent the interests of their clients before this court with competency and diligence. Nothing leads this court to believe the same is not true in the Cripps' case.

The court also finds that the Applicant will suffer prejudice in the event that its request for an administrative expense is not allowed. The Applicant provided necessary and beneficial services to the Cripps in connection with their bankruptcy case. The court has already awarded the Applicant compensation for these services. Absent the issue of timing, the Applicant would normally be entitled to an administrative expense, the only means by which the Applicant can be paid under the plan.

Nonetheless, any prejudice to the Applicant is clearly outweighed by the prejudice that would result to the Cripps, especially because the Applicant could have easily avoided this predicament. The Applicant is directly responsible for the prejudice that it will suffer if the court declines to permit the tardy request. The Applicant received express written notice from the Trustee that the plan was close to completion and that the Trustee would soon be certifying to the court that the Cripps had completed payments under their plan. The Trustee sent her letter to the Cripps regarding plan completion, filed a notice of final cure with respect to mortgage payments, and filed motions to terminate the Cripps' payroll orders. The Applicant was copied on the letter,

which it received along with the Trustee's other filings via the court's electronic filing system.[26] Yet, due to the inexperience of its billing clerk, the Applicant inexcusably failed to take any action by requesting its administrative expense before the issuance of the report of plan completion, requesting that the Trustee delay her report for a reasonable period of time with the consent of the Cripps, or seeking similar relief from the court.  Instead, the Applicant neglected to request an administrative expense until it was simply too late.

The Cripps filed their bankruptcy with the expectation of receiving a discharge within a certain period of time so long as they complied with their plan.  Undoubtedly, the Cripps developed such expectation after consulting with the Applicant at the beginning of their case.   The Cripps have now completed their plan and received their discharge.  They have accomplished their objective.  In the event that the court awarded the Applicant an administrative expense, the court would arguably need to set aside the discharge and vacate the report of plan completion in order for the administrative expense to be satisfied through the plan.  However, no purpose would be served by doing so – the sixty month applicable commitment period has already expired.  The court would essentially be requiring the Cripps, who have persevered through a fairly contested bankruptcy case, to immediately provide a lump sum payment to satisfy the administrative expense, attempt to amend their plan so that the fees and expenses survive discharge, or waive their discharge with respect to the fees and expenses of the Applicant.  The court cannot sanction a situation where the Applicant would be holding the re-entry of the Cripps' discharge captive, regardless of whether the Applicant's intent is benign.

---

[26]     The Applicant does not assert that it was unaware of the letter or any other of the plan completion filings made by the Trustee.  Nor could it, as the Applicant billed over an hour of time to review such filings and communicate with the Cripps regarding issues related to plan completion.

Moreover, although the Applicant filed its request for an administrative expense only two days after the report of plan completion, the length of the delay, to some extent, was actually several months. The Applicant filed its fourth interim fee application in May 2015, meaning that its fifth application could have been filed in September 2015, two months prior to the date the Trustee sent her letter to the Cripps and the Applicant. *See* 11 U.S.C. § 331 (applications for interim compensation may be filed every 120 days, or more often if permitted by the court).[27] When the Trustee sent her letter in November 2015, the Cripps had already incurred approximately one half of the fees the Applicant is now seeking. In the event that the Applicant had filed its application after expiration of the requisite 120 day interval under section 331, the Applicant's exposure as a result of its untimeliness would have been minimized.[28]

Finally, the Applicant had a duty to remain reasonably well informed regarding the status of the Cripps' case. *See* Mich R. Prof. Cond. 1.3 (attorney shall act with reasonable diligence in representing client); Mich. R. Prof. Cond. 1.4(a) (attorney shall keep client reasonably informed about the status of a matter). As evidenced by the time entries in its four interim fee applications, the Applicant performed semi-annual reviews and plan analyses throughout the five years that the Cripps' case has been pending. These reviews were presumably conducted to determine whether any actions needed to be undertaken to ensure that the Cripps were in a position to complete payments under their plan and to receive their discharge. To the extent the Applicant needed additional information to project the date of plan completion, the Trustee made such information

---

[27]   Even if the 120 day period set forth in section 331 had not expired, the court would have been, and will be in future cases, receptive to a request to reasonably shorten such period to ensure that the Applicant and other attorneys representing debtors are paid through the plan, particularly at the end of Chapter 13 cases.

[28]   The Cripps are obligated under their plan to pay unsecured creditors in full. As such, the Cripps would be responsible for payment of the same amount, regardless of the frequency with which the Applicant filed its fee applications. The Cripps would, however, have received advance warning from the Applicant of the need to satisfy additional fees and expenses at the end of their case.

readily available through electronic means, as she does for all debtors. At all times, the Applicant should have been aware of the projected date for the completion of plan payments. After all, there is no party who should be more familiar with a debtor's bankruptcy case than his or her attorney. The court finds that the Applicant was aware, or at least should have been aware, of the status of the Cripps' case, including the time remaining until the Cripps completed payments under their plan. In sum, the Applicant has not satisfied its burden of demonstrating "cause" for the court to permit a tardy request for an administrative expense in the Cripps' case.

### 2.    *The Request for an Administrative Expense in the Mears' Case*

The facts in the Mears' case are much different than in the Cripps' case. In the Mears' case, the Trustee argues that common sense and reasonableness counsel in favor of denying the administrative expense requested by the Applicant. The Trustee argues that because the payroll orders had terminated in the Mears' case, "it was inherently unreasonable from a common sense standpoint" for the Applicant to have filed its request for an administrative expense shortly thereafter. The court disagrees. On October 13, 2015, the Trustee filed on the docket and sent the preliminary letter to the Mears informing the Mears that, subject to completion of a final audit, they had completed their plan payments. The letter also advised the Mears that the Applicant might file a final application seeking payment of additional fees and expenses to be paid as an administrative expense through the plan. Less than thirty days later and before the Trustee filed her report of plan completion, the Applicant filed its application. When the Applicant filed its application, it did so in a manner that was entirely consistent with the letter sent by the Trustee.

To some extent, the court agrees with the Trustee that the Applicant could have made its request for an administrative expense more promptly, particularly because the Applicant had

engineered the early payoff.[29]   However, the fact remains that at the time the application was filed, the Trustee had yet to certify that the Mears had completed all of their plan payments.  Nor could she, as the Applicant filed and served its application in accordance with her letter.  The Trustee and the Mears were thus on notice that, subject to allowance of an administrative expense by the court, the Mears would need to make additional payments under their plan.

Just as importantly and unlike in the Cripps' case, the Mears will suffer little prejudice. The Mears still have significant time in which to satisfy any administrative expense of the Applicant under their plan, as they are not in danger of exceeding the maximum applicable commitment period of sixty months.  As of the date of the application, the Mears could have remained in bankruptcy for approximately seven more months.  The Mears are therefore able to satisfy any administrative expense of the Applicant by making payments over time through the plan.  Alternatively, the Mears could tender a lump sum payment, or perhaps amend their plan, after informed consent, to provide that the fees and expenses of the Applicant survive discharge. In other words, nothing prevents the Mears from satisfying any administrative expense awarded to the Applicant through their plan.

In sum, the court is not persuaded that under the circumstances it should exercise its discretion in the Mears' case by imposing a deadline for the filing of a request for an administrative expense prior to the issuance of the report of completion.  The court therefore concludes that the Applicant's request for an administrative expense in the Mears' case was timely.

---

[29]      Similar to the Cripps' case, after filing its first fee application, the Applicant waited close to a year and a half before filing its current application. *See* 11 U.S.C. § 331. The Applicant's delay in this regard is more understandable than in the Cripps' case, as a reserve had been established, the fees and expenses were relatively nominal, and approximately two years remained under the plan.  Nonetheless, the court's concerns regarding notice of additional fees and expenses remain.

*C.*       *Discharge of Fees and Expenses*

Finally, the court shall consider whether the fees and expenses of the Applicant survive entry of the discharge under the circumstances of each case.  The Applicant contends that because its fees and expenses were incurred post-petition, they are unaffected by the discharge as a matter of law.  The Trustee endorses a somewhat different position, albeit with some inconsistency.  The Trustee first argues that in the event that the court were to allow the fees and expenses of the Applicant to survive discharge, the Debtors' fresh start would be impaired.  However, the Trustee also suggests in her supplemental brief that the compensation awarded to the Applicant may constitute a post-petition claim, as opposed to an administrative expense, that should be paid by the Debtors after entry of the discharge.

In the Cripps' case, the court concludes that the compensation awarded to the Applicant is discharged.  In the Mears' case, the court concludes that because it has awarded compensation that is to be paid as an administrative expense, the Applicant must be paid through the plan, and not after entry of the discharge, unless the court later approves an amendment providing otherwise.

*1.*       *The Fees and Expenses Are Subject to the Discharge in the Cripps' Case*

In the Cripps' case, the Applicant argues that even if its fee application is not deemed to have been timely filed, the Cripps are obligated to satisfy the fees and expenses post-discharge. The court finds the Applicant's argument unpersuasive for several reasons.

First, nowhere in the application does the Applicant even mention that it is requesting that its fees and expenses survive discharge.  *See In re Storozhenko*, 459 B.R. 697, 707 (Bankr. E.D. Mich. 2011) (requiring party to request relief in motion as prerequisite to granting relief); *see also* Fed. R. Bankr. P. 9013 (a request for an order shall "state with particularity the grounds therfor," shall "set forth the relief or order sought," and shall be served on the entities required by the

applicable rules).[30]   Instead, the Applicant requested such relief in a subsequent brief which was not even served on the Cripps.   And, even if the Applicant had requested such relief in the application, the court would likely deny such relief, particularly because the Applicant has not appeared on behalf of the Cripps in connection with the fee application.   At all times, the Applicant has appeared only on behalf of itself.   The Cripps, who would be responsible for satisfying the Applicant's fees and expenses post-discharge, do not appear to have ever been informed of such request.   For these reasons alone, it would be inappropriate for the court to permit the compensation awarded to the Applicant to survive discharge.

Second, the Cripps' plan provides that any compensation awarded to the Applicant is to be paid through the plan as an administrative expense.   According to the plan, this is the only means by which the Applicant can be paid for its fees and expenses, and the plan continues to control unless and until it is modified.   *See* 11 U.S.C. § 1327(a); *cf. In re Johnson*, 344 B.R. at 107-08 (attorneys' fees not discharged because amended plan provided that attorneys' fees remaining unpaid upon completion of plan payments would be paid directly by debtor).   Because the Cripps have completed payments under their plan and the discharge has entered, the plan cannot, as a matter of law, be modified to provide that the compensation awarded shall survive discharge.   11 U.S.C. § 1329(a); *see* 11 U.S.C. § 1328(a).

Third, under no circumstances are the Cripps personally liable to the Applicant post-discharge.   Setting aside the fact that the Cripps' plan provides the exclusive means by which the Applicant can be paid, the court has entered a discharge in the Cripps' case.   Section 1328(a)

---

[30]     To the extent that the Applicant attempts to rely on the briefs it filed after the application, the court declines to consider any relief not previously included in the application. *See*, *e.g.*, *In re Harrison*, 2014 WL 2574000, at *2 (Bankr. W.D. Mich. June 9, 2014) (declining to grant unspecified relief because motion did not adequately give notice of relief requested).

discharges the debtor "from all unsecured debts provided for by the plan" if the debtor completes payments under the plan, among other things. 11 U.S.C. § 1328(a). One court has commented as follows:

> These discharge provisions contrast with a Chapter 7 discharge, which covers only prepetition debts . . . and a Chapter 11 discharge, which covers debts that arose before confirmation. . . Thus, in Chapter 13, if a confirmed plan provides for the post-confirmation services of the debtor's counsel, the Chapter 13 discharge bars collection of the debt for those services.

*In re Hanson*, 223 B.R. at 278.

In its post-hearing brief, the Applicant directs this court to two decisions purportedly holding that fees and expenses survive discharge as a matter of law because they are not prepetition debts. *See Cornelison v. Wallace*, 202 B.R. 991, 993-94 (D. Kan. 1996); *Jensen v. Gantz (In re Gantz)*, 209 B.R. 999, 1003 (B.A.P. 10th Cir. 1997). The court respectfully declines to follow either case, as section 1328(a) refers to the discharge of a "debt," which is liability on a "claim." *See* 11 U.S.C. § 101(5); 11 U.S.C. § 101(12). Because the definition of "claim" does not include a pre or post-petition qualifier, it includes priority claims, including administrative expenses. *See* 11 U.S.C. § 1326(a)(2) (referring to "unpaid claim allowed under section 503(b)"). Moreover, section 1328(a) does not except from discharge the obligations arising under section 330(a), section 503(b)(2) or section 507(a)(2). 11 U.S.C. § 1328(a)(1) – (4); *see, e.g., Boone v. Ryder (In re Ryder)*, 358 B.R. 794, 797-99 (Bankr. N.D. Cal. 2005); *In re Hanson*, 223 B.R. at 778-79.

In the Cripps' case, the Applicant's request for an administrative expense was untimely, thereby precluding satisfaction of the Applicant's fees and expenses from the estate. In addition, even if the Cripps could have been deemed personally liable – a stretch indeed – the discharge has now entered. As such, the Applicant is precluded from taking any action to collect the fees and

expenses, notwithstanding the fact that compensation has been awarded under section 330(a). *See* 11 U.S.C. § 524(a).[31]

Lastly, the court feels compelled to briefly address whether the fees and expenses of the Applicant are post-petition claims that survive discharge, as the Trustee, but not the Applicant, contends. Section 1305(a) provides, in pertinent part, that an entity may file a proof of claim for a consumer debt arising after the petition date for "property or services necessary for the debtor's performance under the plan." 11 U.S.C. § 1305(a)(2). Section 1328(d) provides that an allowed claim under section 1305(a)(2) is not discharged "if prior approval by the by the trustee of the debtor's incurring such debt was practicable and was not obtained." 11 U.S.C. § 1328(d). According to the Trustee, although the Applicant is not entitled to an administrative expense to be paid from the estate, the Applicant is entitled to a post-petition claim to be paid directly by the Cripps after entry of the discharge.

This court, like the majority of other courts to have considered the issue, must reject the Trustee's argument. The court finds a decision from the Bankruptcy Court for the Western District of Tennessee on point and persuasive. *In re Phillips*, 219 B.R. 1001 (Bankr. W.D. Tenn. 1998); *see In re Ryder*, 358 B.R. at 798 n.11 (citing and adopting *Phillips*); *In re Hanson*, 223 B.R. at 778 (same). In *Phillips*, the court concluded that an attorney for a debtor could not seek compensation by filing a post-petition claim for services the attorney provided to Chapter 13 debtors. 219 B.R. at 1007-08. The court explained that section 1305(a)(2) was not intended to cover routine legal work by a debtor's attorney, but rather circumstances in which a debtor is constrained by an

---

[31] The discharge precludes an attorney for a debtor from taking any action to collect fees and expenses, including by sending demand letters. *See In re Hanson*, 223 B.R. at 777. An attorney is not, however, precluded from accepting a strictly voluntary payment from a debtor post-discharge, so long as the fees and expenses have been approved by the court. 11 U.S.C. § 524(f). Of course, the attorney is obligated to disclose any such payment, including after the case is closed, if it is made "in connection with the case," an extremely broad phrase. *See In re Hirsch*, Case No. 12-03851 (Bankr. W.D. Mich. May 13, 2016) (citations omitted).

emergency situation to pay a post-petition expense. *Id.* The court therefore concluded that because section 330 specifically addresses compensation, the fees and expenses of an attorney for a debtor do not constitute post-petition claims under section 1305(a)(2). *Id.* at 1012. Nearly twenty years later, the reasoning in *Phillips* remains sound. Relying on *Phillips* and its progeny, this court likewise holds that fees and expenses of an attorney for a debtor in a Chapter 13 case are not post-petition claims under section 1305(a)(2).

In sum, to the extent any argument can be made that the Cripps remain personally liable for the fees and expenses of the Applicant, the court disagrees. The discharge has entered, and the Applicant is now precluded from seeking to collect.

### 2.      The Applicant's Request in the Mears' Case Is Deficient

The Mears' case again presents different facts than those in the Cripps' case. In the Mears' case, the Applicant requested in its application that its fees and expenses survive discharge. Nonetheless, the request is procedurally deficient. First, the Mears have not filed a post-confirmation amendment requesting that the court approve a modification under section 1329 that would allow the fees and expenses of the Applicant to survive discharge and be paid directly by the Mears. *See* 11 U.S.C. § 1329(a) (permitting modification "at any time before completion of plan payments"). Like in the Cripps' case, the plan in the Mears' case currently provides that the Applicant shall apply for allowance of its fees and expenses as an administrative expense to be paid as a priority claim through the plan. As discussed above, the Applicant was awarded compensation to be paid as an administrative expense through the plan. In addition, the plan provides that the fee reserve shall be applied to satisfy compensation awarded to the Applicant. No plan amendment releasing those funds has been filed by the Mears to date. As such, the provisions of the plan, as confirmed by the court, still control. *See* 11 U.S.C. § 1327(a). The

Applicant, which now holds an administrative expense, is entitled to be paid in full through the plan.

Second, the Mears do not appear to have been given any opportunity to provide their informed consent to the Applicant's request to have the compensation awarded to the Applicant satisfied post-discharge. *See* Mich. R. Prof. Cond. 1.4(b); Mich. R. Prof. Cond. 1.7(b) (requiring informed consent where potential conflict exists); *see also In re Slabbinck*, 482 B.R. 576, 588 (Bankr. E.D. Mich. 2012) (emphasizing the importance of informed consent as part of attorney-client relationship). One court has succinctly stated the following regarding an attorney's disclosure obligations:

> Disclosure involves the attorney explaining to a debtor the nature of the bankruptcy process, what problems could or will be encountered, how those problems should be addressed, and the risks or hazards, if any, associated with those problems. Consent involves a clear understanding on the part of the debtor as to these factors. . .

*In re Bancroft*, 204 B.R. 548, 552 (Bankr. C.D. Ill. 1997). It is unclear based on the record whether the Mears understood that in exchange for application of the administrative expense reserve, they would be responsible for satisfying the compensation awarded to the Applicant after their discharge entered.[32]

For these reasons, the court shall deny without prejudice the Applicant's request that the compensation awarded to it survive discharge in the Mears' case. Instead, the Applicant is entitled to satisfaction of its administrative expense through the plan.

---

[32] Similarly, it is unclear whether the Mears were informed in advance by the Applicant of the estimated amount of any additional fees and expenses that they were likely to incur, including in connection with services related to plan completion.

## **CONCLUSION**

In these cases, the Trustee and the Applicant devoted a significant amount of time and resources to fairly complex issues.  The Applicant filed several briefs which carefully analyzed the facts and directed this court's attention to relevant case law.[33]  In light of the parties' efforts, the court believes that it should provide some guidance to the Applicant and the bankruptcy bar in general.

In order to avoid issues with payment of attorneys' fees at the end of a Chapter 13 case, an attorney should anticipate such issues at the beginning of the case.  The starting point is the retention agreement, which sets forth the rights, responsibilities, and expectations of the parties.  The retention agreement should be protective of the attorney's interests without overreaching, including with respect to compensation issues.  The agreement should anticipate the possibility of additional fees and expenses near the end of a case.  In return, the attorney should agree to use his or her best efforts to request, at regular intervals, interim awards of compensation to be paid as administrative expenses through the plan.

An attorney for a debtor should also proactively address, to the extent possible, issues that might arise during and at the end of a case when formulating the proposed plan with a debtor.  An attorney should refrain from including a provision in the initial plan requesting that any attorneys' fees survive discharge at the outset of the case.  This court is likely to view any such request as premature.  An attorney may wish, however, to advise the debtor, in appropriate circumstances, that the debtor could propose an escrow for additional administrative expenses incurred throughout the case, provided that the plan remains feasible.  Such a provision, like any other provision, should only be included after the debtor has provided his or her informed consent.

---

[33]     The court appreciated the Applicant's candid disclosure of authority which did not necessarily support the Applicant's arguments.

If a possibility exists that *minimal* compensation awarded for plan completion services might create a delay with respect to entry of the discharge, a debtor could seek to amend the plan to provide for direct payment of approved attorneys' fees and expenses post-discharge.  Before approving any amendment, the court will generally consider whether the modification comports with the attorney-client relationship and is appropriate under the circumstances.  A non-exhaustive list of factors the court might consider include (i) whether, at the outset of the attorney-client relationship, the debtor was advised in writing of the potential need to amend the plan to account for reasonable fees and expenses of the attorney at the end of the case, (ii) whether the debtor gave his or her informed consent to the incurrence of additional fees and expenses, including those related to plan completion services, (iii) whether the attorney continued to inform the debtor of the impact of additional fees and expenses that would be incurred by undertaking certain actions, (iv) whether the attorney discussed with the debtor and included in the initial plan, where feasible, an additional provision establishing a reasonable reserve for administrative expenses, including attorneys' fees, (v) whether the attorney provided the debtor with an estimate of fees and expenses at the beginning of the case and any potential deviation therefrom, including the reasons for such deviation, and (vi) whether the attorney minimized any exposure to the debtor by requesting awards of compensation to be paid as administrative expenses with regularity to ensure payment during the plan's applicable commitment period, rather than by the debtor at the end of the case. The court is likely to schedule a hearing to discuss the aforementioned factors based on the circumstances in a particular case.

The court recognizes that the assistance of counsel is often indispensable as the debtor prepares to complete a Chapter 13 case.  As such, the attorney should be paid reasonable compensation for such services, keeping in mind that the court will not unduly impair a debtor's

fresh start.  In general, the court believes that by implementing the procedures set forth herein, the interests of both the attorney and the debtor will be served.

For the foregoing reasons, in the Cripps' case, the court shall award the Applicant compensation in the stipulated amount, deny the Applicant's request for an administrative expense as untimely, and deem the compensation awarded subject to the discharge.  In the Mears' case, the court shall award the Applicant compensation in the stipulated amount to be paid as an administrative expense, and deny without prejudice the Applicant's request to be paid directly by the Mears post-discharge.   The court shall enter orders in each case consistent with this Memorandum Decision.

**Signed: May 13, 2016**





John T. Gregg
United States Bankruptcy Judge